Appeals, we have one case on this afternoon's docket, United States v. Diaz, Mr. Hennings. Thank you Judge Smith, may it please the court. The federal felon in possession statute, section 922 g1, imposes a categorical, no exception, lifetime ban that prohibits millions of Americans from exercising their fundamental right to keep and bear arms. The statute is a distinctly 20th century innovation that would have been unrecognizable to the founders. The government has not cited a remotely similar tradition in this country of permanently disarming any class of citizens based on criminal history or any other criteria. What about a history of violent behavior? Judge Smith, I don't think that the government has even shown that kind of history to us. I think, and especially not a categorical, lifelong tradition of banning folks who engage in violent behavior. So there's really two kind of traditions that they point to. And the first tradition is this tradition of punishing serious crimes. And this one falters at the get-go because this isn't a firearm regulation. Bruin and Rahimi specifically looked at historical regulations that burden the right to bear arms. They specifically addressed firearms. Capital punishment and estate forfeiture only, they only impact firearms very incidentally. There's no indication that either one of those was intended as a way to prevent future danger with a firearm. And those analogies also suffer from a few other flaws because the government broadly reads and overstates the prevalence of capital punishment even at the founding. They cite a few laws that authorized it for certain crimes, but then there are many other crimes that didn't authorize capital punishment. And the question here is what gun rights did those convicted folks at the founding have if they were convicted, if they were imprisoned, and they served their sentence and returned to society? And there's no evidence that any of those folks on their return to society had a permanent lifelong gun restriction. So the assumption is that they could go out and they could buy a gun if they needed one for self-defense. The second tradition the government points to is the sweeping theory that the government can disarm anyone who is dangerous. But the Supreme Court's decision in Rahimi just rejected this exact argument. The government argued there that this, that the Congress can disarm anyone who's irresponsible. And the government acknowledged that irresponsible simply meant dangerous. And in support of that, they cited the exact same historical evidence that they cite in this case. And the Supreme Court rejected that argument. They said responsible is, it's too vague. It's too high a level of generality. The Supreme Court there found a historical tradition that was narrower, a certain subset of folks that are too dangerous. And those are the ones where there's a credible threat of physical violence to another after an individualized court finding. And even those are based, those are temporary restrictions. They are not permanent restrictions. And so the dangerous theory that the government brings forth now, it shares a lot of faults with many of the different adjectives that the government has used to describe who can be disarmed. Dangerous, irresponsible, non-law abiding, unvirtuous. These are all reading the Second Amendment at too high a level of generality. And the result is that they're going to go back to a legislative interest balancing regime that Bruin explicitly denied. And we acknowledge that on the historical analogs, it's, it's a Goldilocks test. We don't need a historical twin, that's for sure. But we also can't read these rights at such a high level of generality, uh, that it waters down the right. We can't give Congress a regulatory blank check. And on this record, neither one of the government's historical traditions, uh, succeeds in justifying 922 G1. I want to take just a little bit of a step back, and this might be stating the obvious, but we're dealing with a statute that Congress passed in the 1960s. In the 1960s, Congress did not have the benefit of Heller, which held for the first time that the Second Amendment protects an individual's right to keep and bear arms. In the 1960s, Congress did not have the benefit of Bruin, which set out the test for how a modern firearm regulation, uh, can comport with the Second Amendment. And obviously, Congress in 1960 did not have Rahimi, which applied the Bruin test to another subsection of 922. And so it's not surprising, maybe, that Congress overstepped its bounds a little bit. It's easy to go out of bounds if the lines have not even been drawn on the playing field. But of course, now, standing here today, we do have the benefit of Heller. We do have the benefit of Bruin and its text and history test. And we do have the benefit of Rahimi, which said that we need to go at a level of generality that is lower than dangerousness or irresponsible or any of those similar words. Did Rahimi also ask us to seek harmony between the statute and the constitutional provision? And if so, how does that square with your argument? It did, but in this case, I mean, 922g1 imposes as restrictive of a restriction on the right to bear arms as you can. It's for the rest of your life. There are no exceptions, not for self-defense, not for your home. And it's categorical. There's no individualized finding that a particular person, it poses any danger. So in this case, we do have to harmonize, but we can't harmonize in this case. And again, part of the problem here was Congress did not have this background when they were drafting 922g1. It just wasn't something that they were concerned with. So, you know, there's just no applications in which 922g1 can be applied without, you know, there's just no history of categorical, no exception, and permanent firearm restrictions. I think, you know, underneath the dangerous, so the dangerous theory is foreclosed by Rahimi, but underneath that, you know, even considering those individual traditions that the government cites to justify the dangerousness theory, those fail on their own terms as well. The going armed laws they cite, we discussed in our supplemental briefs that those are very different. They address misconduct, not a category of people. They, uh, they address the issue of, you know, are temporary. They involve an individualized finding and not a categorical prohibition on a class of people. There are several laws that they cite, you know, of categories of folks that were disarmed at the founding, loyalists, Native Americans, those who wouldn't swear an oath, sometimes Catholics, and those are just as problematic. They're problematic for a couple reasons. You know, as this court said in Rahimi, and I don't think the Supreme Court has any doubt on this, those kind of laws, it's not even clear that those people are part of the people, and the Ninth Circuit's recent decision in Duarte kind of, you know, illuminates on this and say if you refuse to swear an oath, you take yourself out of the body politic that enjoys the right to bear arms. Mr. Diaz does fall within what might be called a subclass of felons who have been found to, in the words of Rahimi, threaten the physical safety of another or likely to threaten another with a weapon. That's from Rahimi. So Judge Smith, this is a really important point, and I'm glad you brought it up, because I think this goes to Diaz's as-applied challenge, and as part of that as-applied challenge, the government has cited a lot of things that have nothing to do with 922g1. They are not an application of 922g1. When we're looking at an as-applied challenge to a statute, we don't ask, can this defendant be disarmed? We ask, can this statute disarm this defendant? And so we have to look at the conduct that the statute actually prohibits, and in this case, it is possessing a firearm, given convictions that are punishable by more than one year in prison. And so all of these other facts, and so I think Rahimi confirms that. The defendant in Rahimi had some troubling history, to put it mildly. But when the Supreme Court got down into applying the facts of his case to determine whether 922g8 was constitutional as applied to him, it looked only at the conduct that 922g8 actually prohibits, and that's possessing a gun while you're under a domestic violence restraining order that has a finding that you pose a credible threat to the, you know, physical safety of another person. So in looking at these as-applied challenges, we don't open the universe to any conduct that Mr. Diaz has ever engaged in in his entire life. As a hypothetical, if Congress passed a law tomorrow saying that redheads are banned from possessing arms, I think we can all agree that that would be unconstitutional. So the government can't justify that statute by going out, arresting a redhead, and then figuring out, oh, two weeks ago, he got in a bar fight and brandished a gun, so it must be constitutional as applied to him, because that conduct- Stated differently, I think your argument is that he can only be disarmed under 922g1 for felony convictions and not the broader term of his criminal conduct or criminal history, which seems to have been an issue in the district court's decision. That's absolutely right. He cannot, especially, there was a charge of making terroristic threats with a gun, and that charge was dismissed. So it's even more problematic to rely on that kind of conduct that was actually charged and then dismissed. Would it be proper to remand to have the district court to consider only felony convictions as opposed to whatever other criminal history was taken into consideration? I don't think we need to at this point. I think this court can follow the same path that Range, the Third Circuit en banc decision, which I realize has been GVR'd like many others, but also Duarte, the Ninth Circuit's decision, and then at least as an as-applied challenge, that 922g1 is unconstitutional as applied to someone that has non-violent convictions that didn't involve misusing a gun. And Mr. Diaz's criminal history, his actual convictions are quite similar to the defendant in Duarte, which the Ninth Circuit said these are not subject to 922g1. These are unconstitutional as applied. So I don't think there's anything that can happen on remand that would move the ball forward. This case is fully brief. Courts all over the country are considering this issue, and it's a fairly narrow legal issue applying Bruin and Rahimi and, you know, with some help from the Sister Circuit's friends. I want to briefly address the first step of the Bruin analysis, the plain text. And it's undisputed, I think, that the conduct Diaz engaged in possessing a firearm is protected under the Second Amendment, but the government has argued that he is not part of the people. I'm not aware of any court post-Bruin that has accepted this argument, and it's even more untenable after Rahimi, because the government relies on the same law-abiding, responsible citizen language from Heller, McDonald, Bruin that the Supreme Court in Rahimi said simply does not limit the scope of the Second Amendment. That does not give the government, you know, an end run around the historical analysis. And so, and this court in, you know, Rahimi itself said that law-abiding is vague. Again, all of these adjectives that the government kind of swaps out for one another to try to justify the same historical evidence at a higher level of generality, it's too general. It gives a regulatory blank check to the government. Also, briefly, I would like to address the government's argument that our Second Amendment challenge is foreclosed by this court's precedent. In Rahimi, this court realized that Bruin fundamentally changed the Second Amendment analysis. And I think at that point, it is, you know, this is hard to argue with. And you go back to this court's prior precedent, applying 922g1 and finding it constitutional. It did not engage in that exacting, rigorous historical analysis that Bruin requires. This court's precedent upholding 922g1 before Bruin did not cite a single historic regulation. They cited two very conclusory law review articles, or three very conclusory law review articles in a case that didn't even involve 922g1. It just was not at issue. At the end of the day, the government has failed to establish a tradition that justifies 922g1 in any application. It's too broad. It is sweepingly broad in its length, it's permanent, it's sweepingly broad in the number of people it disarms, it's categorical, and it's sweepingly broad in the fact that it does not even allow for basic conduct that cuts to the core of the Second Amendment, like possessing a gun for self-defense in the home. So 922g1 is facially unconstitutional, but at the very least, this court should hold that the statute is unconstitutional as it applied to a defendant with non-violent convictions that did not involve the use of a gun. Thank you. You've saved him some time for rebuttal. Thank you, Mr. Hayes. Ms. Reed? Good afternoon. May it please the Court. Mahogany Reed for the United States. I want to start by setting out a couple of very straightforward pathways for the Court to resolve this case, and the first picks up where Counsel Opposite left off near the end of his presentation. We think this Court can hold that Bruin did not abrogate this Court's pre-existing precedent upholding section 922g1. You know, we think that before Heller, this Court did rely primarily on footnote 21 in Emerson, which discussed sources explaining the historical basis for firearm prohibitions on felons, but at no point in this Court's case law did this Court import the means and scrutiny that Bruin abrogated and disclaimed. So we think that this Court's precedents do survive Bruin and now Rahimi. You know, Counsel Opposite has suggested that because Darrington did not engage in the type of in-depth analysis that Heller and Bruin and now Rahimi engaged in, that decision is inconsistent with those most recent Supreme Court decisions, but we don't read Bruin to require the Court to engage in that level of analysis, whereas its pre-existing precedent was broadly consistent with Heller, and we read this Court's cases as broadly consistent with Heller. The second pathway this Court can take is to find that section 922g1 is constitutional as applied to Mr. Diaz, whose felony convictions are inherently dangerous. We think that so holding would necessarily resolve his facial challenge, which the Supreme Court and Rahimi characterized as the hardest challenge to lodge against a statute, and it would also permit this Court to forego many of the complicated questions raised in Counsel Opposite's presentation, including, you know, whether felons are among the people or are categorically prohibited from possessing firearms under the text of the Second Amendment. Many judges— What do you mean when you say inherently dangerous? We mean that Mr. Diaz's felony convictions suggest that if armed, he would pose a risk of danger to others, and so, you know, we think that his theft conviction, for example, a theft conviction creates a risk of confrontation, that if armed, Mr. Diaz would pose a heightened risk of danger to others. I think especially problematic is Mr. Diaz's evading arrest by conviction, right, which obviously reflects an inherent disregard for the rule of law. We think the manner in which Mr. Diaz fled from officers in this case is in a high-speed chase that resulted in a crash after which he continued to flee reflects, you know, a callous disregard for police officers and for innocent bystanders, and we think that both of those convictions, in addition to Mr. Diaz's felony possession conviction, which also reflects a disregard for the law, suggests that if permitted to possess arms, Mr. Diaz would create a risk of harm to others. I do think that this Court's focus should be on the inherent dangerousness of Mr. Diaz's underlying felony convictions for purposes of Section 922g1. I'll note that, you know, some have discerned that an individual's history and characteristics can be relevant to the dangerousness assessment. For example, then Judge Barrett, in her Cantor v. Barr dissenting opinion, suggested that an individual's history and characteristics are—can be suggestive of dangerousness and be a basis for prohibiting an individual from possessing firearms, and we think that in this case, Mr. Diaz's—just his underlying conduct suggests that if armed, he would pose a risk of harm toward others. He— You don't refute that the statute specifically speaks to felony convictions and not a criminal history. That's right. No, I don't dispute that, Your Honor, but I'm just suggesting that to the extent this Court thinks that Mr. Diaz's underlying felony convictions are not serious, we think they are, but to the extent those are not suggestive enough of dangerousness, we think his underlying conduct can be considered, you know, and so I think that this Court can determine that Section 922g1 is constitutional as applied to Mr. Diaz, and again, that would necessarily resolve his facial challenge. I want to push back— If we were to—excuse me, I don't mean to interrupt you, but so if we were to focus on an as-applied challenge in that way, we would then not be addressing a situation in which a hypothetical defendant had been convicted, for example, of felony tax fraud. That's exactly right, Judge Smith, and to your question earlier, Judge Douglas, that would be a way to seek to harmonize Section 922g1 with the Second Amendment is to avoid questions about the outer limits of the government's authority to prohibit firearm possession by felons. We think that Mr. Diaz's felony convictions fall squarely within the government's authority to disarm, and so you wouldn't have to hypothesize about what you would do or how you would resolve a Second Amendment challenge to 922g1 by someone with, you know, an offense that the government believes is serious, but that obviously some others may disagree. I want to just briefly discuss that, you know, Mr. or counsel opposite has discussed the Ninth Circuit's decision in Duarte, just while we're still on the as-applied question. We disagree with the Ninth Circuit's decision in Duarte. We think that Rahimi very clearly forecloses the reasoning in the Ninth Circuit's panel opinion. Of course, the government's en banc petition is still pending, but we think that even under Duarte, and just to remind the Court, the Ninth Circuit in Duarte found Section 922g1 unconstitutional as applied to someone with four felony convictions, but only because, or it put the burden on the government to prove that that defendant's disqualifying convictions would have been severely punished at the founding, either with capital punishment or a state forfeiture, and we wholly disagree with that reasoning. I would just offer that we believe that Mr. Diaz's Second Amendment challenge would fail even in the Ninth Circuit under the reasoning in Duarte, because his, you know, for example, theft felony conviction is analogous to a horse stealing or knowing possession of a stolen horse, which was punished as a capital offense at the founding, and so we think that even under Duarte, Mr. Diaz's challenge would fail. I want to push back a bit against counsel officer's suggestion that the Supreme Court in Rahimi rejected the government's dangerousness and responsibility argument. We acknowledged in our supplemental letter brief that the Supreme Court did reject the government's argument that its prior statements that the Second Amendment extends only to individuals who are responsible was not intended to suggest some scope on the Second Amendment right in and of itself, but the Supreme Court in no way rejected the government's underlying dangerousness argument, which was that history and tradition support the government's authority to prohibit firearms by individuals whose firearm possession would pose a risk of danger to others. The Supreme Court specifically reserved the government's ability to press that argument by explicitly declining to suggest that such categorical disarmaments are inconsistent with the Second Amendment, and when it did so, it referred to the passage in Heller that stated that that decision was not intended to suggest that the long-standing prohibition on the possession of firearms by felons is inconsistent with the Second Amendment, and so I think the Supreme Court very clearly had at least Section 922G1 in mind when it reserved the government's ability to argue that categorical limits on the right to bear arms is permissible. I mean, remind us of some examples of history and tradition at the time of the founding where there would have been a prohibition regarding risk of danger to others. Sure, I mean, we would cite the common law tradition of prohibiting individuals or, I guess, the common law tradition of disarming individuals who would go armed to the terror of the people. That's best reflected in the statute of Northampton that the Supreme Court discussed favorably in Rahimi. That tradition carried its way to early American states. Justice of the Peace Manuals permitted JOPs to prohibit firearm possession by individuals who went armed to the terror of the people. We think that the loyalist laws that counsel opposite discussed also reflect the government's authority to categorically prohibit firearm possession by individuals whose firearm possession would pose a risk of danger to others, and since the 18th century or, you know, late 17th, early 18th century, governments have been prohibiting firearm possession categorically by individuals who would pose a risk of danger to others, right? Infants, vagrants, the intoxicated. So this is all sort of a consistent part of the historical tradition of prohibiting individuals who would pose a risk of danger to others from possessing firearms. I appreciate counsel opposite's argument that the analogs underlying our seriousness, if you will, principle are not themselves firearms regulation. I do want to briefly respond to that. We don't read Heller, Bruin, and Rahimi as requiring the government to founding era firearms regulations and, you know, to rely exclusively on those. Heller itself relied on a whole bevy of historical evidence to support, you know, its holding in that case, as did Bruin, and then the surety tradition in Rahimi, although it did ultimately develop into a set of firearms regulations, was itself originally not focused on firearm prohibitions. So we think that this court can rely on historical evidence outside of firearms regulations to support section 922G1, but again, that is consistent with the principle that, you know, we think does support the categorical prohibition of firearms, but we would urge this court to find that section 922G1 is constitutional as applied to Mr. Diaz based on his specific felony convictions. If the court has no further questions, I think I've responded to all the points I wanted to touch. Thank you, Ms. Reed. Thank you, Your Honor. Mr. Hinnies for rebuttal. Thank you, Judge Smith. I think a glaring omission from my friend's presentation is any discussion of how these regulations, these historical traditions, uh, burden the right to bear arms. Bruin and Rahimi both said that there are two ways to compare a modern firearm regulation to a historical tradition. How does it burden the right to bear arms and why? And the how, again, I don't want to keep going here, but the how of 922G1 is simply unprecedented in this country's history until the 20th century. A permanent, no exception, categorical ban on firearms any place, including in the home and for any purpose, including self-defense. That is a dramatic difference between 922G1 and any of the historical traditions. I can, you know, quickly take down the, we think Rahimi forecloses it's dangerous in this theory. Rahimi, the, the government advanced it. We can disarm anyone who's dangerous. The Supreme Court said you can't, and they came up with a narrower tradition. So it discloses that, but everything under it too are just, they do not support a dangerous theory that would apply to those convicted of a crime like felony. The going armed laws, very different conduct instead of a category of people, uh, loyalist laws and those kinds of things are very different for a few reasons. First, like I said, those people are not clearly within the people even protected by the second amendment. Second, the second amendment is widely seen as, you know, repudiating these kinds of traditions of disarming our political opponents. And third, those kinds of people could regain their firearms or there were exceptions. If they swore an oath, they could get their firearms back. Many had exceptions for self-defense. So the only, you know, if you take those traditions at the government sites, they establish a tradition of disarming folks who misuse a firearm. We agree. I mean, so, you know, Mr. Diaz was convicted of 924C as well in this case, using a firearm in relation to a drug offense. And we do not, we do not fight that on second amendment grounds, but 922G1 is different. So he wasn't misusing a firearm. And the other tradition, this court in Daniels held that, you know, dangerous generally is not a notion that we can rely on. These various loyalist laws and everything were concerned with rebellion and insurrection and putting down political threats. They weren't a vague notion of, you know, dangerous. We can disarm anyone who's dangerous. And again, this is concerning because any of these theories reflect uh, the government's desire to just put any discretion back in Congress. To make it a, you know, legislative interest balancing test that can determine who can have guns and who can't. And that's exactly what Bruin and Rahimi say we cannot do. The second amendment was enacted so that future legislatures in 1960 could not cut down on the right based on their current policy preferences. If we want to change the constitution, we can amend it. But that is precisely why our founders established an individual right to bear arms. Uh, finally, the as, you know, the government says that the statute is as applied or constitutional as applied to Diaz based on speculation that maybe his conduct may be dangerous if he had a gun. I, I don't even see the connection between, you know, this again is just assuming that we can disarm anyone who's dangerous and the government hasn't cited any statistics that show us that people who steal cars are dangerous if they have a gun. That's just not our historical tradition. Uh, so we would ask the court to find the 922 G8 facially violates the constitution or in the alternative, it is unconstitutional as applied to nonviolent felons who have not, do not have a history of misusing firearms during their convictions. Thank you. Thank you, Mr. Handys. The case is under submission and the court is in recess.